UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHAEL LOUKAS #158249,

        Plaintiff,                                    Case No. 2:07-cv-92

v.                                                     Honorable Robert Holmes Bell

MICHIGAN DEPARTMENT
OF CORRECTIONS, et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Michael Loukas #158249, an inmate currently confined at the Chippewa Correctional Facility (URF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Michigan Department of Corrections (MDOC), Corrections Officer Unknown Barney and Corrections Officer Unknown Miron. On November 6, 2007, the Court issued an order dismissing Plaintiff's Fourteenth Amendment due process claims, as well as his claims against Defendant MDOC. Thereafter, the Court ordered service on Defendants Barney and Miron with regard to Plaintiff's First Amendment and equal protection claims.

Plaintiff's complaint alleges that he is Greek Orthodox and that since 1994 he has had in his possession a religious medal which he inherited from his father. Plaintiff states that when he first received the medal, a notice of intent was written and an administrative hearing was held, after which it was determined that the medal was significant to Plaintiff's religious beliefs and not a threat to the security of the institution.

Plaintiff alleges that he was transferred to the Alger Maximum Correctional Facility in February of 2007. Plaintiff was placed on Spruce Unit and Defendant Barney began to harass him about his religious medal. Defendant Barney told Plaintiff that his medal was not allowed in level V. Defendant Barney then checked Plaintiff's record and reviewed the hearing report addressing whether Plaintiff should be allowed to possess the medal in prison. On March 6, 2007, Defendant Barney came to Plaintiff's room and gave him an order to turn over his religious medal. Defendant Barney wrote a notice of intent to send the medal home, stating that he had discussed the matter with other staff and that it was not the type of item which was allowed in level V. Plaintiff turned the necklace over to Defendant Barney. On March 8, 2007, Defendant Miron conducted a hearing and informed Plaintiff that he could possess a necklace with a cross or crucifix, but not a religious medal such as the one that Plaintiff had inherited from his father. Defendant Miron then ordered that the necklace be sent home. Plaintiff seeks damages and equitable relief.

Presently before the Court is the Defendants' Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

As noted above, Plaintiff claims that the deprivation of his religious medal violates his First Amendment right to free exercise of his religious beliefs. Prisoners do not lose their right to freely exercise their religion by virtue of their incarceration. *Cruz v. Beto*, 405 U.S. 319, 322, n. 2 (1972). Freedom of religion being a fundamental right, any regulation which infringes upon it must generally be justified by a "compelling state interest". *See, for example, Wisconsin v. Yoder*, 406 U.S. 205 (1972). However, as a prisoner, Plaintiff's constitutional rights are subject to severe restriction. *See, for example, Bell v. Wolfish*, 441 U.S. 520 (1979) (restriction on receipt of reading materials); *Hudson v. Palmer*, 468 U.S. 517 (1984) (privacy); *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974) (right to call witnesses); *Richardson v. Ramirez*, 418 U.S. 24 (1974) (vote). *See, generally, Washington v. Harper*, 494 U.S. 210 (1990); *Turner v. Safley*, 482 U.S. 78 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987).

Rather, the standard by which prison regulations impinging on prisoner constitutional rights is judged is "reasonableness." *Turner*, 482 U.S. at 88-95; *Washington*, 494 U.S. at 223-25.

In *Turner*, the Supreme Court expressly rejected any degree of "heightened scrutiny" in order to assure that "prison administrators . . ., and not the courts, . . . make the difficult judgments concerning institutional operations." *Id.* at 89, *quoting Jones v. North Carolina Prisoners' Union*, 433 U.S. 119 (1977).

In *Turner*, the court set forth four factors "relevant in determining the reasonableness of the regulation at issue." 482 U.S. at 89-91. First, there must be a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it. *Id.* at 89, *quoting Block v. Rutherford*, 468 U.S. 576, 586 (1984). Second, the reasonableness of a restriction takes into account whether there are "alternative means of exercising the right that remain open to the prison inmate." *Turner*, 482 U.S. at 90. Third, the court should consider the "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Turner*, 482 U.S. at 90. Finally, the existence or absence of ready alternatives of accommodating the prisoner's rights is relevant to reasonableness. *Turner*, 482 U.S. at 90. As stated by the court, this final factor "is not a 'least restrictive alternative' test." *Id.* at 90. Prison officials need not show that "*no* reasonable method exists by which [prisoners'] rights can be accommodated without creating bona fide [prison] problems." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350 (1987).

In their motion for summary judgment, Defendants assert that preventing Plaintiff from possessing the religious medallion did not prevent him from exercising his religious beliefs. However, as noted in the order adopting in part and rejecting in part the report and recommendation:

> Plaintiff alleges in his complaint that his religion and the religion of his entire family is Greek Orthodox and that the symbol on his medallion (the Mother Mary with Baby Jesus) is "significant to their

> religious beliefs, and practice." (Compl. ¶ 14.) In his objections to the R&R Plaintiff has explained that he uses the medallion in his daily prayers and that he also holds his medallion in tough times as a reminder to keep the faith in his religious belief. The Court is satisfied that, when read indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), Plaintiff's pro se allegation that the medallion is significant to his religious beliefs and practice is sufficient to state a claim that Defendants' restriction on Plaintiff's ability to possess the medallion interfered with Plaintiff's First Amendment right to freely practice his religion.

(Docket #7, p. 2.) Therefore, this matter has already been addressed by the court and Defendants' contention to the contrary lacks merit. In addition, Defendants fail to show a "valid, rational connection" between the prison regulation preventing Plaintiff from possessing his religious medal and any legitimate governmental interest. Therefore, they are not entitled to summary judgment on this issue.

Plaintiff also claims that Defendants' conduct violated his equal protection rights. In support of this claim, Plaintiff asserts that Muslim prisoners are allowed to wear medallions, and that Defendants advised him that he could wear a cross, but not a religious medallion, for his own religious belief. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440.

Defendants state that an equal protection claim requires not only a discriminatory effect, but also a discriminatory purpose. Defendants contend that Plaintiff has failed to allege such intentional conduct. In support of this assertion, Defendants cite *Ropoleski v. Rairigh*, 886 F. Supp. 1356 (W.D. Mich. 1995). According to the court in *Ropoleski*:

> Generally, an equal protection claim alleges either (1) that a challenged policy discriminates on its face; or (2) that, although facially neutral, the policy has a disparate impact on a given group; or (3) that the facially neutral policy has been administered unequally. *Watson, supra,* 857 F.2d at 696; *Wellmaker v. Dahill,* 836 F.Supp. 1375, 1385 (N.D.Ohio 1993). The allegations of the complaint indicate that plaintiff is relying on the third theory. Essential to his claim is the allegation not only that defendants' conduct had discriminatory effect, but that discriminatory purpose was a motivating factor. *Jones v. White,* 992 F.2d 1548, 1573 (11th Cir.1993); *Willhauck v. Halpin,* 953 F.2d 689, 711-12 (1st Cir.1991); *Watson, supra,* 857 F.2d at 694. "Discriminatory purpose" implies that the decisionmaker selected a course of action *because of* its detrimental effects on an identifiable group. *Jones, supra,* 992 F.2d at 1573; *Willhauck, supra,* 953 F.2d at 712. Error, mistake in judgment or arbitrary administration in applying a facially neutral policy does not violate equal protection. *Jones,* at 1573.

*Id.* at 1363.

The undersigned notes that Defendants are correct that in order to establish a violation of the Equal Protection Clause when the policy at issue is facially neutral, there must be proof that a discriminatory intent or purpose was a factor in an action taken by the prison officials. *Copeland v. Machulis*, 57 F.3d 476, 480 (6th Cir. 1995). However, in this case, Plaintiff is claiming that the policy discriminates on its face between differing religions. Therefore, Plaintiff need not show that Defendants actually intended to cause him detriment on the basis of his religious affiliation. Accordingly, Defendants are not entitled to summary judgment on Plaintiff's equal protection claims.

However, in their motion for summary judgment, Defendants state that they are entitled to qualified immunity because they adhered to prison policy. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the

unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40. *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983. Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten). *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d at 429. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991).

In this case, Defendants' sole claim to qualified immunity is that they followed policy directives. However, this fact alone is not sufficient to entitle the Defendants to the defense of qualified immunity. As noted above, there is a genuine issue of material fact with regard to whether their conduct interfered with Plaintiff's right to freely exercise his religious beliefs, as well as whether it discriminated against him on the basis of his religion. The conduct complained of in this case, if true, violated Plaintiff's clearly established rights. *Turner*, 119 F.3d at 429. Accordingly, Defendants are not entitled to qualified immunity.

In summary, in the opinion of the undersigned, Plaintiff has sustained his burden of proof in response to Defendants' Motion for Summary Judgment. Accordingly, it is recommended that Defendants' Motion for Summary Judgment (Docket #33) be denied.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

    /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:  June 5, 2008